Good morning, ladies and gentlemen. Our first case for this morning will be Landmark American Insurance Company v. Deerfield Construction and others. We won't go through the whole title. So, Mr. Boland? May it please the Court. My name is Patrick Reed Boland. I represent Deerfield Construction and Sean Graff, the appellants. We are here today because Landmark American Insurance Company, Deerfield's excess insurance carrier, received notice of a claim more than a month in advance of trial, immediately recognized a policy coverage defense, never disclosed that defense to anyone, never communicated with its insurance, Deerfield Construction, and gambled with more than $1.3 million of Deerfield's money. You obviously know that your challenge here is to explain to us why the district judge, who thought that, I'll be generous and say six weeks before the trial, of a case that had been pending for a very long time, and in which long before that moment there was even notice that $1.25 million might be on the table, why this wasn't so late under the terms of this policy that the judge correctly said the excess insurer was off the hook. Your Honor, Illinois law is clear that the mere passage of time is not a bar to insurance coverage, especially when there is a justifiable reason for the delay. Why is there a justifiable reason here? I'll tell you, it looks to me as though Deerfield had a problem with somebody, but it was more likely Loris or it was more likely someone else, not Landmark. They're an excess insurer, and you didn't tell them about this case until the 11th and a half hour. Your Honor, according to the Illinois Supreme Court, the question is whether or not reasonable notice was provided under all facts and circumstances. Right, I'm aware of that. Looking at the district court's opinion, it appears that appropriate weight was not given to all facts and circumstances, and you referenced a problem with American States Insurance Company or perhaps with Loris. Well, here Deerfield was informed by insurance professionals that the claim against it was frivolous, it was minor, it was never sent an excess letter being advised that the policy limits set by the primary, the $1 million, may create a conflict of interest. Why is that relevant under the terms of this particular policy, which simply calls for prompt notice, not prompt notice when it becomes apparent that the excess layer of protection is at issue? Because this was a pretty straightforward policy. Well, Your Honor, I would point you to the Zurich case that's cited in the briefs, and that case decided in 2004 by the First District Appellate Court of Illinois. The policy language at issue in that case also did not afford discretion to the insurance company, but rather the court noted that because it is an excess policy that only applied after exhaustion of the policy limits, there was some discretion afforded to the insured. Here, the landmark policy also only applies after exhaustion of the primary policy, and under the Zurich case, there's a question, the question of reasonable notice depends on when a reasonably prudent insured would foresee that the underlying lawsuit would implicate excess insurance coverage. Looking at all the facts and circumstances of this case, Deerfield had no information to conclude that the case reasonably would implicate the excess insurance policy. In fact, looking at the district court's opinion, it appeared that the district court did not give appropriate weight to all the facts in the record. Those facts would include Landmark's acceptance of the excess claim and its fact that the policy for Landmark only applied after $1 million of primary coverage was exhausted. Additionally, Landmark's John Graham stated and testified that upon receipt of the claim, he would close the file because he, too, did not see the case implicating the excess layer of coverage. Likewise, Landmark's Kevin O'Connor, its Vice President Claims Adjuster, testified that he, upon receiving notice of the claim, immediately noticed a policy coverage defense, reached out to American States, was responsible for Deerfield's defense, and stated that Landmark has the excess coverage for this loss. And this is even though at that very same time, Mr. O'Connor was kept up to speed on trial reports, or at that time, pretrial reports, evidence deposition summaries, and eventually trial reports as the case went to trial. Well, let me try this on you. Notice allows whichever the insurance company is, the primary insurer, an excess insurer, to make its own evaluation of a case. Now, a lot of mistakes were made. We know in hindsight, in this case, the primary insurer, American States, thought that this was a claim that was going to go away without any to-do, and apparently Deerfield also thought that. And it turns out everybody's wrong. You know, for whatever reason, an Illinois jury comes back with an enormous verdict for this victim in the underlying suit. So isn't that the whole point of notice? It allows each potentially involved insurer to assess the case on its own, and Landmark didn't have that opportunity here. Well, I agree that the point of notice is to allow a carrier to investigate a claim. I don't agree that Landmark did not have the opportunity. They're supposed to do it in six weeks? Landmark, as an excess insurance company, followed form to the American States policy. That's typical with excess policies. Nobody wants a lot of litigation over discrepancies between other layers of insurance. As Kevin O'Connor, Landmark's claim representative, testified, he was kept up to speed, and he did have sufficient information to be able to create a counter-evaluation to American States' evaluation. Mr. O'Connor's testimony, which is in the record, states that he had no criticism whatsoever with the way that American States handled the defense of the case. And because of that, I would say the record shows that Landmark did have the opportunity to conduct an evaluation, but rather that it sat on its rights, did not choose to intervene, did not choose to encourage settlement negotiations, except when it actually did on the last day of trial. It's interesting to hear you criticize Landmark for sitting on its rights when this event was when? Was it 2008 or so? I'm trying to remember when the underlying event was. Anyway, there were lengthy periods of time going on in which your clients were relying, as it turns out, too heavily on LORIS. Your Honor, I don't believe the record supports that my clients were relying on LORIS so much that my clients were relying on LORIS to communicate information to Arthur J. Gallagher and relying on Arthur J. Gallagher, therefore, to communicate, as the broker of record for the Landmark policy, to Landmark. With respect to the issue of reasonable timely notice, I believe that the facts in the record showing that insurance professionals told Deerfield that this claim was frivolous, preposterous, and minor should temper and should be considered in determining whether or not Deerfield provided reasonable notice. Here, at the time Landmark received notice, the case... But where is it? I mean, they argue in their brief, Landmark argues, that this particular policy doesn't include language that confers any discretion on you about when to notify... on your client when to notify. It just says prompt notification when you know that you're going to be sued or certainly when a suit is filed. Well, the date of the accident, January 16, 2008, prompts you to notify American, and then when the lawsuit's filed, December 22, 2009, you have a suit filed. So certainly an ordinary reader looking at the policy would think, well, that's a triggering event. That means you have to make sure that Deerfield... I'm sorry, that Deerfield needs to make sure that Landmark gets notice. And it doesn't. It just trusts that this chain will somehow end up on Landmark's desk. In response to that question, I would state that Deerfield was aware that Landmark's policy only provided coverage after exhaustion of the primary policy. And that's what Landmark's policy states. And applying the Zurich precedent cited before this court... Where is the language in the Landmark policy that says that the notice obligation is tied up with the likelihood that the policy will be implicated? The Landmark policy does not so state. However, Illinois courts construing excess policies that apply after exhaustion of the primary policy, which may require prompt, as soon as practicable, or immediate notice, the Illinois courts interpreting that still provide that there is a reasonable time frame which to provide notice based upon when the insured reasonably determines the case may implicate the excess insurance coverage. And that is why there needs to be a look at all of the facts and circumstances and not just an analysis of the mere passage of time, which five years and seven years is a long time. However, those are not all of the facts and circumstances that should be considered by this court. What do you do with the fact that on... I'm looking at Landmark's brief. They indicate at the top of page 10 that on April 23, 2013, the plaintiffs in the underlying lawsuit made a settlement demand of $1.25 million. Why wouldn't that have made you think the excess policy, the underlying policy was only for a million, so you're $250,000 into the excess? Well, first I would point out that that is a fact and circumstance that should be considered in evaluating reasonable notice, and it appears from the district court's order that it did not consider that fact or did not apply appropriate weight to that fact. I would state that that is the first time that a demand was disclosed to Deerfield, and at that time the person assigned to represent Deerfield and defend its interests, David Olmstead, gave no analysis of that demand, and there was never any rebuttal to the analysis of American states that the case was still worth less than the primary policy limit. But there was a specific demand for $1.25 million, and it's still more than a year and a half before you tell Landmark about the case, after that $1.25 million. That is true. So what that settlement demand suggests to me is that it's not just fantasy to think that this might be a case that implicate, even if you're right, that Illinois law looks at whether the excess policy is going to be implicated. There's good reason to think maybe it will be. Well, and that is why there needs to be a complete analysis of all the facts and circumstances because to counterbalance the $1.25 million demand, there's an American states insurance company that is saying the case is frivolous and only offering $75,000. Well, and so you're betting the company on that. You're betting, as it turns out, what is it, $1.3-some million on the correctness of that assessment. Well, in addition to the facts that I just mentioned, Your Honor, there's also the obligation to, on behalf of American States Insurance Company, to notify Deerfield of a claim that may exceed the primary policy limits, and no such notification was ever given to Deerfield. I think part of the issue before the court in reviewing this is looking at the roles that the primary insurance company plays as compared to the excess insurance company. Illinois courts have acknowledged that there are systematic differences between the two, and the primary insurance company is there to investigate the claims, preserve evidence, and preserve facts, and whereas the excess follows form and monitors the case, it may choose to participate if it does so. Here in this case, it appears the district court did not consider that circumstance and did not consider, or rather did not give appropriate weight to the consideration that Landmark applied only after exhaustion of the primary policy limits. When that is considered, the facts were tendered and preserved by American States, such that when Landmark was given notice, Landmark could make its own evaluation of the case. This has shown that when Landmark received notice, it too evaluated the case as being resolvable within the primary policy limits. It only placed $1.00 reserve on the claim, indicating that it did not believe the case would exceed the primary policy limits, and in fact described the verdict as surprising and an unlikely event. At the same time that that occurred, Landmark also had a policy defense that it never disclosed to Deerfield. Was Deerfield really surprised when Landmark raised the issue whether timely notice had been given, given the history of this case? Yes, Deerfield was surprised. Deerfield actually had the personal belief that Landmark was on notice when Arthur J. Gallagher received notice of the original lawsuit and the claim as the broker of record for the Landmark policy. Yeah, that's a whole different line of argument, but we've certainly seen that in the briefs. In Illinois, there are a lot of cases where the question whether one of these brokers is the agent of the insurance company or whether it's the agent of the insurer comes up, and the general rule is that it's the agent of the insured if it's anybody's agent, not the agent of the insurance company. So you have an agency issue here too. If your argument is that notice to AJG, kind of a tongue twister, sufficed to notify Landmark. That is one of the arguments raised by Deerfield, and though the general rule is that Arthur J. Gallagher in this situation would be the agent for Deerfield, there are facts and circumstances that should have been considered to show that Arthur J. Gallagher was actually the agent for Landmark, specifically that it was Arthur J. Gallagher that delivered the policy to Deerfield, it was Arthur J. Gallagher that issued insurance certificates, it was Arthur J. Gallagher that built for the policy. Isn't that what brokers always do? They get insurance, they issue certificates, they bind the policy. What in that set of actions makes you think that something as central as notice of a claim is also delegated to Gallagher? Well, I'm analogizing Arthur J. Gallagher's conduct to the conduct of the brokers at issue in the Molda and Burgos case cited in which the court describes a broker's traditional role as procurement of insurance. Here, beyond procurement of insurance, such as issuing insurance certificates, collecting policy premiums, was found to be, shall we say, extraordinary conduct by the broker, indicating that it may have been acting as the agent for the principal carrier. Turning to our estoppel argument, Deerfield's estoppel affirmative defense should have prevented some rejection. Under Illinois law, an insurer must notify the insurer of a coverage defense without any delay. It's an issue of fundamental fairness. Without disclosing a policy defense, the insurer does not know whose money is at stake during a trial. The district court applied an erroneous standard when it required to show Deerfield that it suffered prejudice by surrendering its defense. Here, Deerfield had already surrendered defense of the claim to the primary carrier, American States Insurance Company. Therefore, the district court's denial or grant of summary judgment over Deerfield's estoppel defense was inappropriate because it applied that erroneous standard requiring Deerfield to surrender its defense. Under Illinois law, estoppel applies when the insurer is aware of a coverage defense, misleads by its conduct or statements that there actually is coverage. Someone relies upon that to their detriment. Here, Kevin O'Connor testified from landmark that upon day one, he knew there was a late notice policy defense, but he never disclosed that. Well, they argue that he didn't even have to disclose it until the verdict came back because it was an excess policy. It was not a primary policy. There's a distinction to landmark's argument. If I may paraphrase landmark's argument, it is essentially that there was no duty to reserve rights under the policy because their duty to defend had not been triggered by exhaustion of the primary policy. But this is not a duty to defend case. Right. They say it's not a duty to defend, which is why they say they had a duty to inform you of this defense only after the verdict came in. The defense was being handled by the other company. I'm speaking to a different obligation, the obligation of identifying a policy coverage defense so that the insurer can know whether or not the policy may or may not be there. To withhold that information forces Deerfield or the people defending Deerfield, American States Insurance Company and its in-house attorney, Mr. Olmstead, to proceed to trial not knowing whether or not their personal assets are at risk. And Mr. O'Connor's statement to American States Insurance Company that landmark, quote, has the excess coverage for this loss is completely inconsistent with his belief at the time that landmark actually did not have to provide coverage to Deerfield. And based upon that, the case was tried as if landmark would indemnify Deerfield for any amount of the judgment above $1 million. In fact, at trial, Deerfield's Sean Graff was informed that he had no personal exposure. And likewise, Mr. Olmstead and Ms. Cruiser, the insurance adjuster for American States Insurance Company, believed that Deerfield had no personal exposure. It seems like that's an argument that strongly indicates that landmark should have had the opportunity to participate more aggressively because otherwise it's free money. Landmark isn't there to protect its exposure above $1 million. I mean, it's only given the six weeks, so effectively not there through all the discovery, through the depositions. If you say, you know, we don't care what the verdict is because we've got this $10 million excess policy, that's a moral hazard. Respectfully, Your Honor, I disagree. And I believe that landmark allowed itself to be in a position where it could both roll the dice on the judgment, and if it came up less than $1 million, it did not have to pay a dime. And also, if it came above $1 million, it too did not have to pay a dime because it could force Deerfield to pay for the excess judgment and deny coverage. All right, that's fine. So to sum up, Your Honor, I would just like to say that in closing, we request that this Court award the relief paid for in our opening brief, specifically reverse summary judgment in favor of landmark, reverse the dismissal of the claims against Arthur J. Gallagher for breach of fiduciary duty and negligence, or in the alternative, reverse the district court's decision denying Deerfield leave to file a medical complaint. Thank you for your time. Thank you. Mr. Macklin, are you first? Yes, sir. May it please the Court. The district court properly granted summary judgment in favor of landmark, and there is no basis to set it aside. The district court correctly found that notice to landmark of a claim five years after a lawsuit for that claim was filed was unreasonable as a matter of law, and that appellant cannot avail itself of coverage under the landmark policy. Can you explain to me what actual prejudice there was on this record, or at least why it's so clear that you were prejudiced, that we don't at least have a factual dispute on that matter? First and foremost, Your Honor, I will cite to the district court that relied on this circuit's ruling in Highland Insurance Company that prejudice isn't a factor when the requirement for notice is one of prompt notice. But even if the prejudice were a factor, the district court correctly held that landmark would have been prejudiced. There is a difference between coming into a case approximately six weeks before trial and having to rely on the record developed by the primary carrier and their in-house defense counsel as to damages, as to experts and their evaluations, and actually being given the ability to meaningfully participate in the discovery and the expert retention, and also to push for settlement negotiations. And so the Illinois Appellate Court in MHM Services held that an excess insurer who is deprived of the ability to meaningfully participate in the defense of a lawsuit until the last possible moment is prejudiced, and therefore landmark did suffer prejudice as a result of the extremely dilatory notice. So in terms of pushing for settlement, didn't landmark have some participation in these last-minute high-low settlement discussions? And landmark said, we're not putting any money on the table, and they didn't really care about... I guess the dispute was really over the low end of the high-low, not the high end. Sure. So I think the word participate does not particularly describe landmark's conduct accurately. Landmark was contacted about the underlying... the settlement negotiations that were ongoing via telephone by the American States adjuster, Lisa Kruiser. So as Your Honor noted before, an excess policy, there is no duty to do anything, really, until the one million limits of the underlying policy are exhausted. So here, there was never a request, or landmark was never notified that American states had put up one million dollars, and so landmark could not, or would not, under the policy, had no obligation to contribute towards a settlement. So that argument is really a red herring, and the fact that appellants are saying that landmark could have offered settlement money doesn't really make any sense in light of the fact that American states wasn't valuing this case for more than $150,000. Right, but for the high-low, the American had agreed to a million, basically the policy limit on that policy, and then there was squabbling, which was never resolved. I'm sure everybody's regret, except for the plaintiff. There was squabbling about the low end, but if landmark had really wanted to have a voice, landmark might have pushed harder on American to take the higher low end, so that landmark could protect its position at the excess level. First and foremost, I'll note that the record is unclear as to what of the high-low discussions landmark actually knew, but the fact of the matter is that American states was gambling with its own money at that low. American states could have continued to negotiate that low, but the record reflects that the jury came back so fast that American states thought it had won and reached a defense verdict, and so negotiations stopped at that point. This is really on American states who could have continued those negotiations and protected its insured by negotiating on that low. I think it was saving around $150,000 between the demand made by the underlying plaintiff and the offer being made by American states.  if prejudice is a factor, landmark was prejudiced, and this factor weighs in favor of a finding that notice was unreasonable. I want to quickly address the first factor of the discretionary factor set forth in Yorkville, which looked to the language of the policy, and as your honor noted, this is a pretty straightforward policy. Opposing counsel cited to the Zurich versus Walsh construction case as an indication that notice to access carriers allows the insured to have some discretion as to when to give that notice, and the MHM services decision from the Illinois appellate court from 2012 looked to that Zurich case and dismissed it. They said that it appears the court, the Zurich court, replaced the specific policy language under consideration with the court statement in Tribune, which is another company, that excess policies generally require notice when it appears likely to reach the excess layer, and the MHM services court says we adhere to the policy language at issue and not to the general rule of what excess insurance companies have in their policies. So that first factor, the district court correctly held,  It does seem interesting to me that you haven't really, other than just in speculative language, indicated anything that you would have done differently had you received the notice the day the accident happened, for that matter, or the day the lawsuit was filed. It's happenstance, and I guess there's the deposition testimony where you say, yeah, American states handled this fine, we don't have any criticism. So I guess your opponents are arguing that it's something of a windfall for you to avoid liability on the policy. Well, I'll address that in two parts, Your Honor. First, John Graham, the RCY landmark representative, did state in his deposition that he would have encouraged negotiations and had the opportunity to encourage the mediations to take place, which American states canceled. But as an additional note, excess insurers, when they're given notice and monitor a claim, often associate in counsel to additionally defend the insured and to help develop the case where you have a situation that's here where American states has its in-house defense attorney defending the insured and certain expert discovery isn't being pursued, certain damages aren't being explored, and I think there is there was a wage loss claim that there was no discovery conducted into opposing that wage loss claim. So these are things that excess insurers generally do to protect their money and protect themselves is to monitor that claim and talk with the underlying adjuster to the underlying carrier to make sure that all those steps are being taken. While hindsight is 20-20, I think the fact remains that Landmark was deprived of even the and to even encourage early settlement discussions, especially when that $1.25 million demand was made in April of 2013. Right, so do we make nothing of the reserve that Landmark set aside for this case of a dollar? That sounds like you really don't think you're facing much risk of a payout. That note, that testimony from Landmark is part of the claims file and it was based on what the primary carrier was reporting as respects liability and as respects damages. I don't think it, I think that likely would have been different had Landmark had the opportunity to be involved in this case from a defense perspective and monitoring perspective and known of, I think there was testimony of a specific witness who testified as to how events unfolded and giving rise to the underlying accident and I think that Landmark would have had the opportunity to really change things had it been involved in the underlying case. With respect to the estoppel argument that counsel raised the record is clear that That's basically resting on the things that Landmark did between December when it gets, when everybody agrees it has now actual notice of this case and when the trial occurs, the estoppel argument? Correct, your honor. That's my understanding of the time period Correct, your honor. And the record is clear that appellant would not have done anything differently had they known of Landmark's coverage defense throughout the four years of litigation neither appellant nor American States valued this case at anything more than $150,000 so to say that appellant would have pressured American States to pay its million dollars or to tender its million dollars up to Landmark for settlement is disingenuous at best. The fact remains that this is a classic hindsightist 2020 argument and there's no evidence of prejudice on the part of appellant. I see that I'm out of time so I'll conclude my argument here. Thank you. Thank you, your honor. Mr. Sterling May it please the court Scott Sterling for Arthur J. Gallagher Risk Management Services. Deerfield seeks this court expand the extra contractual duties of an insurance broker beyond what any Illinois court has done. That's improper for three reasons. First, no such duty to report claims for an insurance broker on behalf of a client long after the policy has been successfully procured has ever arisen from common law in Illinois cases. Second, the Illinois Insurance Producers Liability Act in 1997 codified the common law duty which involves ordinary care and skill in renewing procuring, finding, or placing the coverage requested by the insured or proposed insured. Nothing within that duty addresses a duty to report claims and this makes sense because that's the nature of what an insurance broker does. It seems like your argument that the space between you and the plaintiffs is really how particular the duties are. So you're looking at the duties Gallagher had or the securing the policy, accepting a couple of premiums, right? There were payments made through Gallagher. I thought Gallagher in the end was the one that gave the notice to Landmark whereas your opponents are saying more globally this makes them an all-purpose agent. So it is correct that Gallagher ultimately gave notice in just because they gave notice doesn't mean that they have a legal duty to give notice. And actually don't the plaintiffs need to show that Gallagher actually is acting for Landmark because that way Gallagher giving notice to Gallagher is giving notice to Landmark as opposed to acting for Deerfield. The plaintiff has two positions that are opposing each other in the same case. In the case against Landmark they're arguing that Arthur J. Gallagher is Landmark's agent. In the case against Arthur J. Gallagher they're saying Arthur J. Gallagher is our agent and more than an insurance broker they even had a duty to report claims on our behalf. So those are two different arguments in different cases that don't necessarily square. The reason that there's no duty here is the district court found it didn't exist in common law at all. If you look at the Illinois cases before the IPLA one of them is Pitway. They always talked about the duty of an insurance broker in terms of procuring and negotiating the policy faithfully. They discussed that that duty typically ends once the policy is procured. In the Pitway case it's the closest that Illinois gets to addressing claims. The broker there actually told the client that they didn't believe a claim was covered and therefore the client didn't report it to the insurer and reported. The Illinois appellate court there actually found that the broker had no duty under the common law because a broker doesn't have a legal duty to advise as to the nature of claims and the policy. And that's what's happened here. An insurance broker is licensed to sell and procure insurance. The IPLA states the duty in that nature. The argument that Deerfield is making is essentially that the main duty of a broker is to procure and negotiate insurance policies and the statute carves out any fiduciary duty they have for anything they do in that regard. But they still have a fiduciary duty if they do something that's not within their licensed specialty, that's not within their specialized knowledge. That interpretation runs directly counter to what a fiduciary duty is supposed to be. A fiduciary duty exists because it gives an elevated standard of care or duty to an actor who has specialized knowledge and operates on that. In addition to the lack of a duty at common law and that the IPLA actually limits the duty of insurance brokers, there's one more reason why the district court was correct in dismissing Arthur J. Gallagher from the case. This court also typically follows a prudential doctrine in addressing state law claims in cases where there are equally appealing interpretations of state law where one would expand liability and one would restrict liability or would be narrower. And this court has typically left the expansion of liability of state law to the state courts and chosen the more restrictive or restrictive holding of law. And that's a third reason why there's no reason to reverse the district court here. On the second question, whether the district court denied leave to amend, there are several reasons why the district court was well within its discretion. The first reason is for the same reason as the district court was correct in the first place in granting the motion to dismiss. The proposed amended complaint would have been futile because there's still, even under this voluntary undertaking theory that they asserted, there still would not have been a duty of care to report the claims on behalf of an insurance broker. But beyond all that, the court really looked at the untimeliness of the motion for leave to amend and found that Deerfield was untimely and it was not diligent as this was a motion for leave to amend 16 months after the dismissal of Arthur J. Gallagher. At no time before then did they ever seek to amend or bring Arthur J. Gallagher back into the case. And this would have required just 7 days or 8 days before the close of expert discovery. Arthur J. Gallagher would have fought another motion to dismiss if it would have if Deerfield would have survived that, discovery would have had to start anew because Arthur J. Gallagher had not been able to participate in discovery to that point. Of course the interesting thing about Gallagher here is that normally you would think once the insurance has been procured, the broker's done. And they're out of the picture. But Arthur J. Gallagher was not out of the picture. There's an ongoing relationship between these companies. There was an ongoing relationship to a certain extent. There's none pleaded. So to look at the initial complaint, the only source of this duty that they've alleged is that Arthur J. Gallagher procured the policy and they were the agent for that policy. But if you look at evidence beyond that which I guess could be relevant to the leave to amend question but not the first question, it was I think several years that Arthur J. Gallagher had been off of the account. Loris was handling their insurance matters and Tiffany Kruger when she got some notice from the primary carrier asking about if there's excess coverage. It was years later and she said that they'd been off the account for five years but they did forward notice on to Landmark. So it wasn't an ongoing relationship. It certainly wasn't a special relationship as you see in those New York cases that Deerfield cites. There was nothing pleaded or in force of any special duty here. Or undertaking. If they are doing things that they didn't need to do. That's right. One, I don't think the affirmative undertaking theory would be good anymore given the IPLA and this court and M.G. Skinner seem to reject an affirmative undertaking theory. But second, if Deerfield wanted somebody to report claims for them, they could have done it through contract. That's the nature of a duty that's outside of the traditional duties of a broker and the IPLA lets them contract for that and therefore they didn't. There's no allegation of that and therefore there's no duty. Thank you. Your time ran out Mr. Boland. If you have only one minute I will give you a minute. Brief points on rebuttal. Prejudice is a factor to be considered in reasonable notice. Here there was no prejudice to Landmark because it never would have offered dollar one to contribute to settlement. American State Insurance Company only offered $75,000 to settlement so testimony that it was prejudiced is wrong as they admitted they would never be able to control the primary policy's ability to settle the case or influence settlement themselves. They testified that they received Landmark's Kevin O'Connor testified that he received reports promptly was kept up to speed on the case and had no criticism of the way the case was defended. With respect to Landmark's comments regarding MHM the case cited before this court, that case is wholly distinguishable. That case was settled by the insured in the excess layer while the primary was already exhausted and attempting to settle with the excess insurance company's money. That was not the case here in which the case could have been resolved had Landmark only stated its coverage defense. For the foregoing reasons, I request that you grant the relief stated in the opening brief. Thank you very much. Thanks to all counsel. We will take the case under advisory. Thank you.